*United States v. Kelly*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of August, two thousand twenty-six.

PRESENT:    GUIDO CALABRESI,
            STEVEN J. MENASHI,
            SARAH A. L. MERRIAM,
                  *Circuit Judges.*

———————————————————————————

UNITED STATES OF AMERICA,

      *Appellee,*

    v.                                                    No. 25-495

JAMES KELLY,

      *Defendant-Appellant.*

———————————————————————————

*For Defendant-Appellant*:        DAVID L. MCCOLGIN, Charlotte, VT.

*For Appellee*:        ADAM Z. MARGULIES (Connie L. Dang, David R. Felton, Michael D. Maimin, *on the*

brief), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Woods, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant James Kelly appeals from a judgment of conviction and sentence entered by the district court after a jury found him guilty of two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts One and Two), and one count of using, carrying, and possessing a firearm, which was brandished, during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three). The district court sentenced Kelly principally to 160 months of imprisonment: 76 months on Counts One and Two, to run concurrently, and a consecutive term of 84 months on Count Three. On appeal, Kelly argues that the district court erred by admitting testimony, by applying a sentencing enhancement, and by failing to pronounce the conditions of supervised release. He also argues that his counsel was ineffective. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

**I**

Kelly's convictions were based on robberies he committed at delis in the Bronx in 2021 and 2023. Surveillance footage from the first robbery in October 2021 shows Kelly entering the deli wearing a black jacket over a black hooded sweatshirt and a black face mask, walking behind the counter with his hands in his pockets purporting to have a gun, and demanding "weed money" from the employee behind the counter. Kelly asked the employee whether he wanted to "die right [there]" and threatened to "shoot the shit" out of him. Presentence

Report ¶ 12 (alteration in original). Kelly took $1500 and fled. Surveillance footage from the second robbery in January 2023 shows Kelly entering a different deli wearing a face mask, white shoes, and black pants with two white stripes, walking behind the counter to approach two employees, demanding money, and threatening to shoot the employees while pointing a firearm at them. Kelly fled with $400 in a bag. Surveillance footage from the apartment building where Kelly lived showed him walking up a stairwell in the same white shoes seen during the robbery and carrying the same bag from the robbery, which visibly contained the striped pants worn during the robbery.

Kelly was indicted in March 2023, and a superseding indictment was filed in January 2024. Before trial, the district court denied Kelly's motion *in limine* to exclude the testimony of Officer Joseph Whelan identifying Kelly in the surveillance footage from his apartment building's stairwell. Officer Whelan was familiar with Kelly from a previous unrelated arrest. At trial, Detective Andrew Nash identified Kelly as the individual in a still image from the stairwell surveillance footage. Detective Nash was familiar with Kelly because he had interviewed Kelly after Kelly's arrest in January 2023. The jury convicted Kelly on all counts in the indictment.

## II

In this appeal, Kelly argues that (1) the district court erred by admitting Officer Whelan's identification testimony; (2) his counsel was ineffective by failing to object to Detective Nash's testimony; (3) the district court erred by applying a three-level sentencing enhancement for possessing or brandishing a dangerous weapon during the October 2021 robbery; and (4) the district court erred by failing to orally pronounce the standard conditions of supervised release at the sentencing hearing. We consider each argument in turn.

## A

Kelly argues that the district court erred by permitting Detective Whelan to identify him as the person in the surveillance footage from the stairwell of Kelly's

apartment building shortly after the January 2023 robbery. According to Kelly, Detective Whelan's identification testimony was inadmissible under Federal Rule of Evidence 701 because the jury was in as good a position as Whelan to determine whether it was Kelly in the footage. He further contends that the testimony should have been excluded under Federal Rule of Evidence 403 because the district court restricted cross-examination in a way that prevented him from effectively challenging Whelan's identification without revealing Kelly's prior arrests. Kelly failed to raise these objections during the trial, so "we review the admission of this evidence for plain error." *United States v. Pierce*, 785 F.3d 832, 840 (2d Cir. 2015). We conclude that the district court did not plainly err by admitting Officer Whelan's testimony.

Rule 701 permits lay opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Pursuant to the second requirement, "[w]here the jury is 'in as good a position as the witness to draw the inference' to which the opinion relates, the opinion is not helpful and should not be admitted." *United States v. Walker*, 974 F.3d 193, 205 (2d Cir. 2020) (quoting *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)). But "where an opinion is the result of factors not otherwise possessed by or communicated to the jury, lay opinion testimony is likely to be helpful." *Id*.

The district court did not plainly err by concluding that Officer Whelan's identification would be "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(b). Officer Whelan had previously arrested Kelly for an unrelated robbery in December 2022, and at that time he closely observed Kelly in person for about twenty-five minutes. Whelan therefore had the opportunity to observe Kelly's "manner of dress, gait, and demeanor," and we have "previously found such insights sufficient to render an opinion helpful to the jury." *United States v. Arroyo*, 600 F. App'x 11, 15 (2d Cir. 2015). "Recognizing that eyewitnesses sometimes find it difficult to describe the

4

appearance or relationship of persons, the atmosphere of a place, or the value of an object by reference only to objective facts, the law permits such witnesses to testify to their personal perceptions in the form of inferences or conclusory opinions." *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005). And we have specifically held that such identification testimony "would help the jury determine [the defendant's] identity" when "the surveillance footage was not entirely clear" and the testifying witness "was familiar" with the defendant. *United States v. Christopher*, No. 23-6169, 2024 WL 5135382, at *3 (2d Cir. Dec. 17, 2024).

In this case, the surveillance footage was not entirely clear because the individual in the footage wore a head covering that obscured portions of his face, and the stairwell camera recorded him at a downward angle from above. These circumstances meant that testimony from a witness familiar with the defendant would be helpful to the jury. *See Walker*, 974 F.3d at 205.

Nor was the admission of Officer Whelan's testimony plainly erroneous under Rule 403. Evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. The district court limited the potential for prejudice by "requiring that Whelan's profession not be mentioned (other than that he works for a governmental agency), and that the Government not elicit testimony that Whelan arrested Kelly." *United States v. Kelly*, No. 23-CR-113, 2024 WL 182409, at *5 (S.D.N.Y. Jan. 17, 2024). The admission of identification testimony is not "an abuse of discretion where the district court 'directed the government not to delve into the circumstances of the parole officers' relationships with the defendant,' leaving to the defendant the decision whether to reveal his criminal history as the basis for the relationship." *Walker*, 974 F.3d at 205 (quoting *United States v. Farnsworth*, 729 F.21 1158, 1161 (8th Cir. 1984)). Kelly was "free to cross-examine [Whelan] about the nature of their relationship (to attempt to show, for example, that [he] was biased against him, or for any other reason), but chose not to do so." *Id.* at 206. We "place great weight" on the instructions to counsel to limit the risk of unfair prejudice. *Id*. The decision of the district court to admit Officer Whelan's testimony was not plainly erroneous.

5

**B**

Kelly argues that his trial counsel was constitutionally ineffective for failing to object to the testimony of Detective Nash identifying Kelly as the person depicted in a still image from the stairwell surveillance footage. Kelly contends that Nash's identification was inadmissible (1) under Rule 701 because the jury was equally capable of identifying the person depicted and (2) under Rule 403 because Nash's status as an experienced detective gave his identification undue weight.

"When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Adams*, 768 F.3d 219, 226 (2d Cir. 2014) (quoting *United States v. Tarbell*, 728 F.3d 122, 128 (2d Cir.2013)). We have observed that "[s]uch claims are more appropriately raised in the first instance through a habeas corpus petition to the district court, which is 'best suited to developing the facts necessary to determining the adequacy of representation during an entire trial.'" *United States v. Cheng Le*, 902 F.3d 104, 120 (2d Cir. 2018) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). We decline to resolve Kelly's "ineffective assistance claim on this appeal, leaving [Kelly] to pursue it, if he wishes, in a timely habeas corpus petition." *Id.*

**C**

Kelly claims that the district court erred by applying a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) for possessing or brandishing a dangerous weapon during the October 2021 robbery. Kelly maintains that while he kept his hand in his pocket to suggest that he had a concealed firearm, the enhancement did not apply because he did not use his hand itself to create the appearance of a firearm. "Because [Kelly] failed to object to the [enhancement]

6

before the district court … we review the court's application of that enhancement for plain error." *United States v. Nawaz*, 555 F. App'x 19, 28 (2d Cir. 2014).

The sentencing guidelines provide for a three-level enhancement "if a dangerous weapon was brandished or possessed" during a robbery. U.S.S.G. § 2B3.1(b)(2)(E). The commentary explains that "an object shall be considered to be a dangerous weapon" for purposes of § 2B3.1(b)(2)(E) if "the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury." *Id.* § 2B3.1, comment. (n.2(B)). The commentary identifies the illustrative example of when "a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun." *Id*.

Kelly argues that our decision in *United States v. Taylor*, 961 F.3d 68 (2d Cir. 2020), requires us to vacate his sentence. In *Taylor*, the defendant used his visible hands to gesture toward his waistband, suggesting that he had a firearm there. 961 F.3d at 72. We concluded that the enhancement did not apply because the defendant had merely "used his hands to gesture in a manner suggesting that he had a firearm *elsewhere*, specifically, in his belt." *Id.* at 75. It could not be said that the defendant *used an object* to create the appearance of a weapon because "[a]n unconcealed hand would not appear to be itself a weapon." *Id.*

In this case, however, Kelly's hand was concealed while he purported to have a gun and threatened to shoot the deli employee. Our decision in *Taylor* does not address this circumstance. We conclude that the district court did not plainly err by applying the enhancement. During the October 2021 robbery, Kelly kept his hands concealed in the pockets of his sweatshirt, told the employee that he had a gun, and repeatedly threatened to shoot and kill him. *See* App'x 327; Government Ex. 1301 at 00:17-1:00. Kelly asked the employee whether he wanted to "die right here," warned that on the employee's "first move" Kelly would shoot, and threatened to "shoot the shit out of" him. *Id.* The surveillance footage shows Kelly making exaggerated swinging movements with his hand inside his right pocket.

*See* Government Ex. 1301 at 00:26, 00:47. Taken together, Kelly's concealed hand, the resulting bulge and movements inside his pocket, and his repeated threats to shoot the clerk provided a sufficient basis for the district court to conclude that Kelly used his concealed hand to create the impression of a firearm.

The example identified in the guidelines supports this conclusion. The guidelines provide that "a defendant [who] wrapped a hand in a towel during a bank robbery to create the appearance of a gun" has used an "object in a manner that created the impression that the object was" a dangerous weapon. U.S.S.G. § 2B3.1, comment. (n.2(B)). A towel would not necessarily create the distinct shape of a firearm held in the defendant's hand. An observer would likely be unable to distinguish between an empty hand and a hand holding a firearm when the hand is covered by a towel. The towel conceals the hand and enables the defendant's words and conduct to create the impression that the concealed hand is a weapon. The same reasoning applies to a hand concealed in a pocket. In both circumstances, the covering obscures the hand, and the defendant uses his concealed hand, together with threats or gestures, to make the victim believe that he is armed. Nothing in the commentary requires the distinction Kelly now urges between a concealed hand presented as *itself* a firearm and a concealed hand presented as *holding* a firearm.

Other circuits agree that a defendant's use of his hand in his pocket to create the impression of a firearm qualifies for the enhancement. In *United States v. Stitman*, the defendant kept one hand in his pocket, gestured to the bulge in his pocket created by his concealed hand, and told the victim that he had a firearm. 472 F.3d 983, 985-87 (7th Cir. 2007). The Seventh Circuit upheld the application of the dangerous weapon enhancement, reasoning that "[t]he difference between wrapping a hand in a towel and concealing it in a pocket is inconsequential" when the defendant created the objectively reasonable impression that he was armed. *Id.* at 987. In *United States v. Souther*, the Fourth Circuit held that a hand concealed in a coat pocket, coupled with a statement that the defendant had a firearm, could create the appearance of a dangerous weapon even without a particular motion

designed to reproduce the outline of a firearm. *See* 221 F.3d 626, 629-30 (4th Cir. 2000). As the Fourth Circuit explained, the defendant's statement made his concealed hand appear to be a dangerous weapon just as effectively as pressing a finger into a victim's side or covering a hand with a towel. *See id*. at 630. Our decision in *Taylor* identified both *Stitman* and *Souther* as examples of decisions in which "the defendant's hand was concealed such that the hand itself appeared to be a dangerous weapon." 961 F.3d at 76.

Accordingly, the district court did not plainly err by applying the enhancement. In light of several factors—(1) Kelly's concealment of his hand in his pocket, (2) his motions with his concealed hand, (3) his repeated threats that he had a firearm, (4) the example in the guidelines commentary of a hand concealed in a towel example, and (5) our court's previous reliance on *Stitman* and *Souther*—it cannot be said that applying the enhancement was a "clear or obvious" error "rather than subject to reasonable dispute." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

**D**

Kelly argues that the district court erred by failing to orally pronounce the twelve standard conditions of supervised release later included in the written judgment. The district court expressly stated at the sentencing hearing: "The standard conditions of supervised release 1 through 12 shall apply." App'x 810. Kelly contends that this statement was insufficient because the district court did not specifically identify the presentence report as the document containing those conditions. Because Kelly did not make this objection during sentencing even though he had a meaningful opportunity to do so, we again review for plain error. *See United States v. Brown*, 173 F.4th 45, 48 (2d Cir. 2026). Under the plain error standard, Kelly must establish that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Marcus*, 560 U.S. at 262 (alteration omitted) (quoting *Puckett*, 556 U.S. at 135).

We have held that "a sentencing court intending to impose non-mandatory conditions of supervised release, including the 'standard' conditions described in § 5D1.3(c), must notify the defendant during the sentencing proceeding." *United States v. Maiorana*, 153 F.4th 306, 314 (2d Cir. 2025). But the sentencing court "need not read the full text of every condition on the record." *Id.* It may instead "expressly adopt or specifically incorporate by reference particular conditions that have been set forth in writing and made available to the defendant in the PSR, the Guidelines, or a notice adopted by the court." *Id*.

In this case, all twelve standard conditions that the district court imposed were listed and numbered in the presentence report. *See* Presentence Report at 25-26. On the first day of sentencing, the district court confirmed that Kelly had reviewed the presentence report with counsel and provided additional time for him to do so. When sentencing resumed for a second day, the district court again stated that it had verified that Kelly and his counsel had read and discussed the presentence report. The district court then pronounced that "[t]he standard conditions of supervised release 1 through 12 shall apply." App'x 810. The only set of twelve numbered standard conditions made available to Kelly and discussed at sentencing was the list of standard conditions in the presentence report. The sentencing guidelines identify, in a policy statement, thirteen "standard" conditions of supervised release that are numbered differently. *See* U.S.S.G. § 5D1.3(c) (2024). In the context of the sentencing hearing, it made sense that the district court was referring to the twelve standard conditions listed in the presentence report. Imposing those twelve conditions therefore does not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 562 (2d Cir. 2020) (quoting *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013)). We conclude that the district court did not plainly err in making its oral pronouncement.

10

\* \* \*

We have considered Kelly's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court